**SHAMIS & GENTILE, P.A.**
Katherine S. Phillips (SBN: 353048)
kphillips@shamisgentile.com
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 479-2299

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg (SBN: 330090)
scott@edelsberglaw.com
Gabriel Mandler**
gabriel@edelsberglaw.com
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320

***pro hac vice application forthcoming*

*Attorneys for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Sergio Ayala, on behalf of himself and all others similarly situated,

Plaintiff,

v.

Jackson's Food Company, LLC,

Defendant.

Case No.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Sergio Ayala ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendant Jackson's Food Company, LLC ("Defendant") based upon personal knowledge as to himself, and upon information, investigation and belief of his counsel.

## INTRODUCTION

1. This class action seeks to challenge Defendant's false and deceptive practices in the marketing and sale of several of its products, which are marketed as made entirely with avocado oil.

2. Specifically, Defendant has sold and marketed the Products (fully defined in Paragraph 12, below) with the phrase "ALWAYS WITH AVOCADO OIL" (the "Avocado Oil Representation"), representing to consumers that its Products are made entirely with avocado oil.

3. Despite the Avocado Oil Representation, and unbeknownst to consumers, the Products are not made entirely with avocado oil. Instead, the Products are adulterated with cheaper seed oils.

4. Plaintiff and other consumers purchased the Products and paid a premium price based upon their reliance on the Avocado Oil Representation. Had Plaintiff and other consumers been aware that the Avocado Oil Representation was false, they would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff and Class members have been injured by Defendant's deceptive business practices.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as at least one member of the proposed Class(es) is a citizen of a state different than Defendant's state of citizenship; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interest and costs.

6. This Court has general personal jurisdiction over Defendant because it conducts and transacts substantial business in California, and intentionally and purposefully placed the Products into the stream of commerce within California.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Namely, Plaintiff purchased one of the Products in this District.

## PLAINTIFF

8. Plaintiff is a citizen of the United States and the State of California, and he currently resides in Pomona, California. In or around May 2026, Plaintiff purchased the Jackson's Avocado Oil Sweet Potato Chips Product from a Sprouts store in Pomona, California. Based on the Product's Avocado Oil Representation, Plaintiff reasonably believed that the Product was made entirely with avocado oil. Had he known that the Product was not made entirely with avocado oil, he would not have purchased it, or would have paid significantly less for it.

9. Despite Defendant's misrepresentation, Plaintiff would purchase the Products, as advertised, if they were actually made entirely with avocado oil. Although Plaintiff regularly shops at various retail stores that carry the Products, absent an injunction of Defendant's deceptive advertising, he will be unable to rely with confidence on Defendant's advertising of the Products in the future. Furthermore, while Plaintiff currently believes that the Products are not made entirely with avocado oil, he lacks personal knowledge as to Defendant's specific business practices, and thus, he will not be able to determine whether the Products truly will accurately reflect their advertising. This leaves doubt in his mind as to the possibility that at some point in the future the Products could be made in accordance with the Avocado Oil Representation. This uncertainty, coupled with his desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading representation. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly, believing that the Products are made entirely with avocado oil.

## DEFENDANT

10. Defendant Jackson's Food Company, LLC is a Wisconsin limited liability company with its principal place of business in Muskego, Wisconsin. Defendant operates the Jackson's brand which sells a variety of chips and snacks, including the Products challenged in this Complaint. Defendant sells the Products throughout California, including in this District.

## FACTUAL ALLEGATIONS

11. Defendant is responsible for the formulation, manufacturing, marketing, labeling, advertising, distribution and sale of Jackson's branded products, which are sold in retail stores across the United States as well as directly on Defendant's website.

12. The Products at issue in this case are the Jackson's Avocado Oil Sweet Potato Chips and Jackson's Kettle Cooked Sea Salt Potato Chips Only with Avocado Oil (collectively, the "Products").

13. Defendant has labeled each Product with the phrase "ALWAYS WITH AVOCADO OIL," representing to consumers that its Products are made entirely with avocado oil. The Products are depicted below:

14. However, despite the Avocado Oil Representation, the Products are not made entirely with avocado oil. Instead, the Products are adulterated with cheaper seed oils.

15. Independent scientific testing confirms that the Products are not made entirely with avocado oil. In 2026, researchers at the University of California, Davis, Department of Food Science and Technology and the University of California Agriculture and Natural Resources published a peer-reviewed study (the "Study") of the authenticity of avocado oil used as an ingredient in commercially processed foods.[1] A true and correct copy of the Study is attached hereto as Exhibit A ("Ex. A").

16. The Study set out to determine whether processed foods, including chips, mayonnaise and salad dressings, that claim to contain avocado oil as the sole oil ingredient in fact contain the oil declared on the label. *Id.* Only products that declared a single edible oil (e.g., avocado oil) in the ingredients, and that did not list any additional edible oils, were included. Across all categories the Study analyzed 74 samples. *Id.* The Study tested 28 avocado oil–labeled chip samples, consisting of two separate production lots of each of 14 different avocado oil–labeled chip products. *Id.* The products were purchased in 2025 and 2026 from retail stores in

[1] Natalie Lopez-Alvarez et al., *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389 .

California and from online sources, and each lot was analyzed in duplicate. *Id.* The brand and product name of every sample tested is identified in the Study's brand information exhibit, a true and correct copy of which is attached hereto as Exhibit B ("Ex. B").[2]

17. The Products at issue in this action were among the avocado oil–labeled chip products tested. Specifically, the Study tested and reported results for two separate lot numbers of each of the following: Jackson's Avocado Oil Sweet Potato Chips Product (Samples 21 and 22) and Jackson's Kettle Cooked Sea Salt Potato Chips Only with Avocado Oil Product (Samples 23 and 24). *See* Ex. B.

18. To recover and test the oil used in each of the Study's products, the researchers first recovered the lipid (oil) fraction from each chip sample using a published extraction protocol for potato chips. Approximately 30 grams of chips was blended in a food processor. Ex. A. Approximately 10 grams of the crushed chips was then weighed into a cellulose extraction thimble and subjected to Soxhlet extraction with n-hexane at 69°C for 25 cycles. *Id.* The residual hexane was evaporated under a drying step and the sample was left in a fume hood until no hexane remained, yielding the extracted fat from the chips for analysis. *Id.*

[2] Brand Information Relating to the Study, *supra* note 1, available at https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2353660743779.

19. For the fatty acid profile, the extracted oil was converted to fatty acid methyl esters (a standard chemical preparation that allows the individual fatty acids in any edible oil to be separated and measured), using a published official method for that preparation (COI/T.20/Doc. No 33/Rev.1), and analyzed by gas chromatography with flame ionization detection ("GC-FID"). *Id.* The individual fatty acids were identified against a 37-component certified reference standard covering the full range of fatty acids found in edible oils. *Id.* The measurement method is common to all edible oils; the avocado-specific benchmarks against which the results were judged are set forth in Paragraph 20 below.

20. The fatty acid and sterol profile measured for each chip sample was then compared against the compositional ranges for authentic avocado oil established by the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999). *Id.* Those ranges are designed to encompass the natural variability of authentic avocado oil attributable to cultivar, geographic origin, maturity, and growing conditions. *Id.* The researchers then applied further tolerances that operated in the tested products' favor: a deviation limited to a single fatty acid or sterol marker that did not exceed the Codex limit by more than ten percent was disregarded and the sample was treated as consistent with authentic avocado oil, and a sample that was fully consistent as to one profile and only borderline as to the other was likewise treated as consistent. *Id.* Only samples exhibiting multiple deviations, or patterns

inconsistent with authentic avocado oil reference profiles, were classified as inconsistent. *Id.*

21. Both lots of each Product failed those criteria. Each of the four Jackson's samples was classified as compositionally inconsistent with authentic avocado oil. *See* Ex. B.

22. The compositional deviations measured in the avocado oil–labeled chips, including the Products, were not random. Ex. A. They followed a single, consistent pattern: reduced levels of palmitic acid (C16:0), palmitoleic acid (C16:1), cis-vaccenic acid (C18:1 n-7), beta-sitosterol, and clerosterol, together with elevated levels of stearic acid (C18:0), campesterol, stigmasterol, delta-7-stigmastenol, and delta-7-avenasterol. *Id.* That combination is not characteristic of authentic avocado oil. *Id.* It is instead characteristic of cheaper vegetable seed oils, and is the signature of substitution or dilution of avocado oil with such oils. Most of the avocado oil–labeled chips fell outside the Codex ranges for palmitic acid, palmitoleic acid, and stearic acid, and outside the Codex ranges for campesterol, stigmasterol, and delta-7-avenasterol. *Id.* Principal component analysis of the fatty acid and sterol data confirmed the point: many of the avocado oil–labeled samples clustered not with authentic avocado oil, but with the Study's comparator products formulated with canola, corn, soybean, and/or sunflower oil. *Id.*

23. The cis-vaccenic acid results are particularly probative. Cis-vaccenic acid (C18:1 n-7) is an established marker for detecting seed oil adulteration of

avocado oil because it is characteristically elevated in authentic avocado oil and present at markedly lower levels in the common seed oils used to adulterate it. *Id.* In the Study, the avocado oil–labeled samples classified as consistent with authentic avocado oil contained a mean cis-vaccenic acid content of 5.3% ± 1.0% of total fatty acids, clustering in a 4–6% range. *Id.* The samples classified as inconsistent (i.e., the group that includes the Products) contained a mean of only 1.7% ± 0.5%, clustering in a 1–2% range that aligns with typical vegetable seed oil profiles. *Id.* The difference between the two groups was statistically significant ($p < 0.001$). *Id.*

24. These deviations cannot be attributed to frying or to any other ordinary step in the manufacture of chips. *Id.* The researchers specifically tested that explanation by preparing model potato chips and model corn tortilla chips fried in pure avocado oil under commercial frying conditions (180°C for seven minutes and four minutes, respectively), and then extracting and analyzing the oil from those model chips using the same methods described above. *Id.* Frying changed the major fatty acids by less than 0.6%; it changed cis-vaccenic acid by only 0.1%; it changed palmitic acid, palmitoleic acid, and stearic acid by no more than 0.2%; and it left delta-7-avenasterol unchanged. *Id.* In other words, chips fried in authentic avocado oil still test as authentic avocado oil. Those processing-induced changes are a small fraction of the deviations measured in the Products and cannot explain them. *Id.* The only explanation consistent with the data is that the oil in the Products is not entirely

avocado oil, but instead consists in substantial part of cheaper seed oils—precisely as Plaintiff alleges, and precisely contrary to the Avocado Oil Representation.

25. The Avocado Oil Representation is material to reasonable consumers because avocado oil is widely regarded as healthier, and therefore more premium, than other cooking oils, and consumers pay more for it as a result.

26. That reputation is well founded. Avocado oil delivers meaningful health benefits, including cardiovascular benefits and anti-inflammatory effects.[3] Avocado oil also performs better than many other cooking oils because of its high smoke point and mild taste.[4]

27. Seed oils, by contrast, are viewed by many consumers as ingredients to be avoided. The eight most prevalent seed oils, known colloquially as the "hateful eight," are believed by many to be toxic, a reputation driven in part by their high linoleic acid content, which is thought to promote inflammation linked to conditions such as arthritis, heart disease, metabolic syndrome, stroke, and type 2 diabetes.[5]

---

[3] Marcos Flores et al., *Avocado Oil: Characteristics, Properties, and Applications*, 24 Molecules 2172 (June 2019), https://pmc.ncbi.nlm.nih.gov/articles/PMC6600360/.

[4] *Yes, Avocado Oil Is Good for You*, Cleveland Clinic (Dec. 19, 2024), https://health.clevelandclinic.org/is-avocado-oil-good-for-you.

[5] Julia Zumpano, RD, LD, *Seed Oils: Are They Actually Toxic?*, Cleveland Clinic (March 3, 2025), https://health.clevelandclinic.org/seed-oils-are-they-actually-toxic.

28. For these reasons, many consumers seek to eliminate seed oils from their diets and instead pay a premium for alternatives such as avocado oil. Defendant has capitalized on that consumer preference by labeling and advertising the Products as made entirely with avocado oil when they are not.

29. The reasonable belief that the Products are made entirely with avocado oil was a significant factor in Plaintiff's and other Class members' decisions to purchase the Products. Thus, Defendant promises products made entirely with avocado oil, but provides consumers with products that are adulterated with cheaper seed oils.

30. As the entity responsible for the development, labeling, manufacturing, advertising, distribution and sale of the Products, Defendant knew or should have known that the Products' Avocado Oil Representation is false and misleading.

31. Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's false and misleading representation. Nonetheless, Defendant deceptively advertises the Products in order to deceive consumers and gain an unfair advantage in the market.

32. Consumers are willing to pay more for the Products based on the belief that the Products are made entirely with avocado oil. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth about them. Thus, through the use of the

misleading representation, Defendant commands a price that Plaintiff and the Classes would not have paid had they been fully informed.

33. Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

## PLAINTIFF LACKS AN ADEQUATE REMEDY AT LAW

34. Plaintiff pleads the equitable claims and remedies asserted in this Complaint, including restitution and injunctive relief, in the alternative to the legal claims and remedies asserted herein. Plaintiff and the Classes are entitled to do so because they lack an adequate remedy at law for the equitable relief sought. As to the restitution sought, the legal remedies available to Plaintiff and the Classes are inadequate because they are not equally prompt, certain, or efficient and require proof of elements and entitlement to relief different from those required for restitution. Accordingly, if Plaintiff or any Class member is unable to recover damages under the legal claims asserted herein, restitution may nevertheless be necessary to restore money wrongfully obtained by Defendant. As to injunctive relief, damages are retrospective and cannot redress the prospective injury alleged in Paragraph 9 above. Only an injunction can remedy Plaintiff's continuing inability to rely on Defendant's labeling of the Products.

## CLASS ACTION ALLEGATIONS

35. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**California Class**

All residents of California who purchased any of the Products within the applicable statute of limitations period ("California Class").

**California Consumer Subclass**

All residents of California who purchased any of the Products for personal, family, or household purposes, within the applicable statute of limitations period ("California Consumer Subclass") (together with the California Class, the "Classes").

36. Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

37. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

38. Plaintiff is a member of all the Classes.

39. **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by Defendant's records through its online marketplace, or through sales data obtained via third parties. At a minimum, there likely are tens of thousands of Class members.

40. **Commonality:** There are questions of law and fact common to the proposed Classes. Common questions of law and fact include, without limitation:

a. whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

b. whether reasonable consumers would rely upon Defendant's representation about the Products and reasonably believe the Products are made entirely with avocado oil;

c. whether Defendant knew or should have known its representation was false or misleading;

d. whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

e. whether certification of each Class is appropriate under Rule 23;

f. whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

g. the amount and nature of the relief to be awarded to the Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

41. **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased one or more of the Products. Plaintiff and the members of the Classes relied on the representation made by Defendant about the Products prior to purchasing the Products. Plaintiff and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that Defendant's representation was untrue.

42. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

43. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any

individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

44. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of tens of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint. Further, because the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible, for individual Class members to obtain redress. Furthermore, many of the Class members may be unaware that claims exist against Defendant.

45. **Declaratory and Injunctive Relief:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendant will continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this

Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq.***
**(*For the California Consumer Subclass*)**

46. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

47. Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.

48. The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

49. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By representing the Products with the Avocado Oil Representation, Defendant has represented and continues to represent that the Products have characteristics (i.e., that they are made entirely with avocado

oil) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

50. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By representing the Products with the Avocado Oil Representation, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., that they are made entirely with avocado oil) when they are not of that standard. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

51. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By advertising the Products with the Avocado Oil Representation, Defendant has advertised the Products with characteristics it intended not to provide to consumers. As such, Defendant has violated section 1770(a)(9) of the CLRA.

52. Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By representing the Products with the Avocado Oil Representation and then supplying Products that are adulterated with cheaper seed oils, Defendant has supplied the Products in a manner inconsistent with its previous representation. Therefore, Defendant has violated section 1770(a)(16) of the CLRA.

53. At all relevant times, Defendant has known or reasonably should have known that the advertising of the Products' Avocado Oil Representation is false and misleading, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the Avocado Oil Representation when purchasing the Products. Nonetheless, Defendant deceptively advertises the Products as such in order to deceive consumers into believing that the Products are made entirely with avocado oil, when they are not.

54. Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representation when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the California Consumer Subclass.

55. Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products are not made entirely with avocado oil.

56. Under Cal. Civ. Code § 1782, on or around September 29, 2026, counsel for Plaintiff mailed a notice and demand letter by certified mail to Defendant, outlining that Defendant has violated the CLRA for the reasons described herein. If within 30 days of receipt, Defendant does not agree to rectify the problems identified herein, Plaintiff will amend this Complaint to seek damages pursuant to

Cal. Civ. Code § 1780 on behalf of himself and the members of the California Consumer Subclass.

57. In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached hereto as Exhibit C to this Complaint.

**<u>SECOND CLAIM FOR RELIEF</u>**
**Violation of California's False Advertising Law**
**California Business & Professions Code §§ 17500, *et seq.***
**(*For the California Class*)**

58. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

59. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

60. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

61. Defendant has represented and continues to represent to the public, including Plaintiff and members of the proposed California Class, through its

deceptive advertising, that the Products are made entirely with avocado oil when they are not. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representation was and continues to be misleading, Defendant has violated the FAL.

62. As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the California Class. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to him and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***
**(*For the California Class*)**

63. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

64. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California Business & Professions Code § 17200 ("UCL").

65. The UCL, Cal. Bus. & Prof. Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

66. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the proposed California Class.

67. Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Products' advertising. Deceiving consumers into believing they will receive Products made entirely with avocado oil, but failing to provide the Products as advertised, is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the proposed California Class.

68. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because, due to the Products' Avocado Oil Representation, the Products have the effect of deceiving consumers into believing they will receive products made entirely with avocado oil when the Products are not manufactured as such. Because Defendant misled Plaintiff and members of the California Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the California Class.

69. Plaintiff requests that the Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to him, and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
**(*For the California Class*)**

70. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

71. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for breach of express warranty under Cal. Com. Code § 2313.

72. California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

73. Plaintiff and members of the California Class formed a contract with Defendant at the time they purchased the Products. As part of those contracts, Defendant described the Products with the phrase "ALWAYS WITH AVOCADO OIL," representing that the Products are made entirely with avocado oil.

74. The Products' Avocado Oil Representation is: (a) an affirmation of fact or promise made by Defendant to consumers that the Products are made entirely with avocado oil; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmation of fact or promise. In the alternative, the representation about the Products is a description of goods which was made as part of the basis of the bargain to purchase the Products,

and which created an express warranty that the Products would conform to the product description.

75. Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

76. Defendant has breached the express warranties made to Plaintiff and members of the California Class by failing to provide the Products in accordance with the Avocado Oil Representation.

77. Plaintiff and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with them. As a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

78. Plaintiff and the other California Class members notified Defendant of the breaches of its express warranties within a reasonable time and/or were not required to do so. Indeed, Plaintiff sent a notice letter to Defendant regarding its breaches on or around September 29, 2026. Defendant was also on notice of its breaches from other sources, including the Study cited *supra*.

**<u>FIFTH CLAIM FOR RELIEF</u>**

**Breach of Implied Warranty**

**Cal. Com. Code § 2314**

**(*For the California Class*)**

79. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

80. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for breach of implied warranty under Cal. Com. Code § 2314.

81. California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

82. California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

83. Defendant is a merchant with respect to the sale of the Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

84. By advertising the Products with the Avocado Oil Representation, Defendant made an implied promise in the Products' labeling that the Products are

made entirely with avocado oil. The Products, however, have not conformed to this promise because the Products are adulterated with cheaper seed oils. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable. Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

85. If Plaintiff and members of the California Class had known that the Products' Avocado Oil Representation was false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

86. Plaintiff and the other California Class members notified Defendant of the breaches of its implied warranties within a reasonable time and/or were not required to do so. Indeed, Plaintiff sent a notice letter to Defendant regarding its breaches on or around September 29, 2026. Defendant was also on notice of its breaches from other sources, including the Study cited *supra*.

**SIXTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
**(*For the California Class*)**

87. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

88. Plaintiff brings this claim individually and on behalf of the members of the California Class, against Defendant for unjust enrichment.

89. As alleged herein, Defendant has intentionally and recklessly made a misleading representation to Plaintiff and members of the California Class, to induce them to purchase the Products. Plaintiff and members of the California Class have reasonably relied on the misleading representation and have not received all of the benefits (i.e., Products made entirely with avocado oil) promised by Defendant through the Products' Avocado Oil Representation. Plaintiff and members of the proposed California Class have therefore been induced by Defendant's misleading and deceptive representation about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

90. Plaintiff and members of the proposed California Class, have conferred a benefit upon Defendant as Defendant has retained monies paid to it by Plaintiff and members of the proposed California Class.

91. The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the proposed California Class—i.e., Plaintiff and members of the proposed California Class did not receive the full value of the benefit conferred upon Defendant. Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon it.

92. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the proposed California Class are entitled to restitution,

disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

## SEVENTH CLAIM FOR RELIEF
**Common Law Fraud**
**(*For the California Class*)**

93. Plaintiff repeats the allegations contained in Paragraphs 1-45 above as if fully set forth herein.

94. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class, against Defendant for common law fraud.

95. Defendant has willfully, falsely, and knowingly misrepresented the Products through the Products' Avocado Oil Representation, as it knew that the Products were not made entirely with avocado oil.

96. Defendant has therefore made a knowing, fraudulent misrepresentation as to the Products.

97. Defendant's misrepresentation was material (i.e., it affected the purchasing decisions of Plaintiff and members of the California Class, given its importance), and is central to the Products' functionality because the Products are advertised as made entirely with avocado oil, but do not conform to that representation.

98. Defendant knew or recklessly disregarded the fact that the Products' Avocado Oil Representation was false and deceptive.

99. Defendant intended that Plaintiff and members of the California Class rely on the Products' advertising, as if they had known the truth that the Products' Avocado Oil Representation was false and misleading, they would have paid less for the Products or would not have purchased them at all.

100. Plaintiff and members of the California Class have reasonably and justifiably relied on Defendant's misrepresentation when purchasing the Products, and if Plaintiff and members of the California Class had known the truth about the Products, they would not have paid monies for the Products or would have paid less monies for the Products.

101. For these reasons, Plaintiff and members of the California Class have suffered monetary losses, including interest they would have accrued on these monies, as a direct and proximate result of Defendant's fraudulent conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for the following relief:

A. Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class counsel;

B. A declaration that Defendant's actions, as described herein, violate the statutes and laws described herein;

C. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the proposed Classes, including, inter alia, an order prohibiting Defendant from engaging in the unlawful acts described above;

D. An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

F. An award of nominal, punitive, and statutory damages;

G. An award to Plaintiff and his counsel of reasonable expenses and attorneys' fees;

H. An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I. For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: September 29, 2026

**SHAMIS & GENTILE, P.A.**

By: */s/ Katherine S. Phillips*
Katherine S. Phillips (SBN: 353048)
kphillips@shamisgentile.com
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 479-2299

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg (SBN: 330090)
scott@edelsberglaw.com
Gabriel Mandler**
gabriel@edelsberglaw.com
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320

***pro hac vice application forthcoming*

*Attorneys for Plaintiff and the Putative Classes*